**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LAWRENCE TYNES,

      Plaintiff,

v.                                     CASE NO:  8:15-CV-1594-T-30AEP

BUCCANEERS LIMITED PARTNERSHIP,
a Delaware Limited Partnership d/b/a
Tampa Bay Buccaneers, and FIRST ALLIED
DEVELOPMENT PARTNERS LIMITED
PARTNERSHIP, a Nevada Limited
Partnership,

      Defendants.
_____/

**ORDER**

THIS CAUSE comes before the Court upon Plaintiff's Motion to Remand (Dkt. #23) and Defendant's Response (Dkt. #32) thereto.  Upon review of the motion, response, and being otherwise advised in the premises, the Court concludes that Plaintiff's motion should be granted and this action remanded to the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida.

**BACKGROUND**

**I.      Introduction**

Plaintiff Lawrence Tynes is a former professional football player for the Tampa Bay Buccaneers, one of the member clubs of the National Football League ("NFL").  Tynes filed

the instant action in state court, specifically, the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, alleging two Florida premises liability claims (Count I) and a negligent misrepresentation claim (Count II) related to an alleged outbreak of a virulent strain of methicillin-resistant staphylococcus aureus ("MRSA") at One Bucs Place, the building Defendant Buccaneers Limited Partnership uses for, among other things, its training facility (hereinafter "the Facility"). Tynes contracted MRSA while undergoing post-surgical rehabilitation at the Facility. Tynes has been unable to play professional football as a result of the MRSA infection.

Defendant Buccaneers Limited Partnership removed the case based on complete preemption under § 301 of the Labor Management Relations Act ("LMRA") of 1947, 29 U.S.C. § 185. Defendant argues that Tynes' claims are inextricably intertwined with the NFL's collective bargaining agreement ("CBA") because they concern the medical treatment he received in rehabilitating an alleged football-related injury.

Tynes moves to remand the case, contending that his claims arise purely under common law and have nothing to do with the CBA. Tynes argues that the complaint is focused entirely on Defendant's mismanagement of the sanitary conditions at the Facility.

The Court concludes that remand is appropriate and necessary because Tynes' claims relate solely to the manner in which Defendant negligently managed the condition of the Facility that Tynes elected to use for his own rehabilitation regimen; the claims do not relate to "medical treatment," as Defendant contends, and they are not related in any way to the

CBA, premised on any duty provided for in the CBA, nor do they require interpretation of the CBA.

## II.   The Pertinent Facts Alleged in the Complaint

Tynes was a veteran NFL place kicker and joined Defendant Buccaneers Limited Partnership in July 2013.  Defendant First Allied Development Partners Limited Partnership owns the Facility and leases it to the Bucs.  The "mixed-use" Facility houses spaces geared to professional football activities, such as a locker room, showers, weight room, training room, and soaking tubs, all of which are used by football players, coaching staff, and others.  The Facility also has space for recreation (such as a theater), laundry facilities, a kitchen and dining area, a press room for media conferences, and offices for business administration and management.  The Facility is "available year-round for use by members of the public," including the news media, local high-school students, Bucs staff members (who are not football players), family members of Bucs players, and members of the general public.

Tynes, who had never before had a MRSA infection, reported for training camp in late July healthy and in good condition.  Before each of his nine prior NFL seasons, Tynes voluntarily visited a podiatrist for a minor procedure on the toe-nail on the big toe of his kicking foot, each without incident.  He did so again on July 30, 2013; Defendant was aware that he had the procedure.

In order for the toe to heal, Tynes needed access to hot and cold tubs and a bucket to soak the toe.  He was not required to rehabilitate the toe at the Facility.  Tynes could have

elected to undergo his post-procedure rehabilitation regimen at any number of facilities other than the Facility.  Tynes chose to do his rehabilitation regimen at One Bucs Place, i.e., the Facility, "based on the Bucs's representations concerning the world-class, state-of-the-art nature of the facility."  In particular, "Bucs officials further represented that appropriate precautions and procedures designed to prevent the spread of infection were in place and being followed at the Bucs Training Facility."

Defendant's representations turned out to be untrue and misleading.  Defendant did not have appropriate precautions and procedures in place to prevent the spread of infection in the Facility.  "Unlike other teams," Defendant failed to "institut[e] rigorous sanitation/cleanliness protocols" to prevent the spread of MRSA infection inside the Facility. For instance, Defendant failed to ensure that "sterile techniques" were used, such that equipment, devices, and surfaces used by multiple people throughout the Facility were properly cleaned and disinfected.  Moreover, Defendant failed to warn Tynes that several other people using the Facility at the same time - including a coach, a trainer, and several players - were suffering from bacterial infections.  These people "used the same hot and cold tubs, soak buckets, and other therapy devices, equipment, and surfaces" as Tynes, and Defendant "failed to properly and reasonably . . . sterilize, disinfect and/or clean" them.  As a result, Tynes developed a MRSA infection in the toe that caused permanent damage and ended his professional career.

-4-

### III.    The Claims

Tynes' Amended Complaint asserts two counts against Defendant.  Count I, denominated "Negligence and Premises Liability," asserts that Defendant owed Tynes two related duties: "to use reasonable care in maintaining the Bucs Training Facility in a reasonably safe condition" and "to have given Mr. Tynes timely notice and warning of latent and concealed perils known to [the Bucs], or which by exercise of due care should have been known to [them]."  The claims are premised on the duties of an owner or lessee of commercial premises under Florida common law; specifically, they relate to Defendant's operation of the Facility.  For example, Count I alleges that Defendant failed to "maintain the . . . Facility in a reasonable safe condition so as to prevent . . . infections . . . to invitees" or to "inspect the . . . Facility to ensure the premises were safe and free of infectious diseases."

Count II alleges a claim for negligent misrepresentation, also grounded in Defendant's purported mismanagement of the sanitary conditions at the Facility.  Tynes avers that "[t]he Bucs supplied false information to Mr. Tynes regarding . . . the precautions and procedures designed to prevent the spread of infection that were purportedly in place and being followed at the . . . Facility" in an effort "to induce Mr. Tynes . . . to undergo [his] rehabilitation regimen[] at the . . . Facility."  "Further, while encouraging Mr. Tynes to use One Buccaneer Place as the site for his voluntary rehabilitative course, the Bucs failed to disclose, and

actively concealed, ongoing separate incidents of infection amongst  individuals who used and visited [the Facility]."

## SECTION 301 PREEMPTION

It is axiomatic that federal courts are courts of limited jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994).  They possess only that power authorized by the Constitution and by statute.  *See id.* (citing *Willy v. Coastal Corp.,* 503 U.S. 131, 136-137 (1992) and *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986)).  These jurisdictional grants are not to be expanded by judicial decree.  *See id.* at 377 (citing *American Fire & Casualty Co. v. Finn,* 341 U.S. 6 (1951)).  It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction.  *See id.* (citing *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178 (1936)).  Removal statutes are narrowly construed; when the defendant and the plaintiff clash about jurisdiction, any uncertainties must be construed in favor of remand.  *See Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994).

In considering whether they possess subject matter jurisdiction over a case or controversy, federal district courts are guided by the well-pleaded complaint rule that provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination. *See Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152 (1908). Pursuant to that rule, a case may be removed based on federal question jurisdiction only when the plaintiff's statement of his own cause of action shows that it is based on federal

law. *See Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.,* 182 F.3d 851, 854 (11th Cir.1999) (citing *Mottley*, 211 U.S. at 149). Stated differently, only state-court actions that originally could have been filed in federal court may be removed to federal court. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).

However, one limited exception to this general rule is "when a federal statute wholly displace[s] the state-law cause of action through complete preemption." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003). This narrow exception to the well-pleaded complaint rule, otherwise known as the "complete preemption" doctrine, occurs where "Congress [has] so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64 (1987). The theory behind the doctrine is that "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar,* 482 U.S. at 393 (quoting *Metro. Life,* 481 U.S. at 65).

Defendant relies upon section 301 of the LMRA to support its removal of Tynes' state-court action. Section 301 of the LMRA is one of but a few statutes under which the Supreme Court has recognized complete preemption. *See, e.g., Allis-Chaimers Corp. v. Lueck,* 471 U.S. 202, 209-11 (1985). Section 301 of the LMRA provides that "[s]uits for a violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties,

without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).  The statute serves to preempt state-law claims for what are in actuality suits for violation of contracts between an employer and a labor organization.  *See Caterpillar,* 482 U.S. at 394.  In *Allis-Chalmers Corp.,*the Supreme Court held that when resolution of a state-law claim is substantially dependent on an analysis of the terms of a CBA, the claim is preempted and federal labor law applies.  *See also Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 413 (1988).

The Eleventh Circuit, recognizing that the Supreme Court has "stated this test [for § 301 preemption] in a variety of ways," has framed the two-part inquiry as follows: "whether the claim arises from a CBA, or whether 'the resolution of [the] state-law claim depends upon the meaning of a collective-bargaining agreement.'"  *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1176 (11th Cir. 2010) (quoting *Lingle*, 486 U.S. at 405-06).

## DISCUSSION

Tynes' claims encompass duties that arise under Florida common law.  Specifically, Count I includes two premises liability claims that arise from the duties that a premise owner owes to its invitee to use reasonable care in maintaining the premise in a reasonably safe condition and the duty to provide the invitee notice of latent and concealed perils known to the premise owner, or which by exercise of due care should have been known to the owner.  *See Friedrich v. Fetterman & Assocs., P.A.*, 137 So. 3d 362, 365 (Fla. 2013).

Count II is a negligent misrepresentation claim that relates to the common law duty to exercise reasonable care or competence in supplying information.   There are four elements: "(1) there was a misrepresentation of material fact; (2) the represser either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the represser intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1259 (11th Cir. 2014).   In connection with this claim, Tynes alleges that Defendant supplied him with false information regarding the precautions and procedures designed to prevent the spread of infection in order to convince Tynes to undergo his rehabilitation regimen at the Facility.

Importantly, the CBA is silent with respect to NFL clubs' maintenance of their training facilities.   It is also silent with respect to any duty to warn invitees, including players, of dangerous, unsanitary conditions on the premises, or to provide information concerning infection-control policies in place at team training facilities.   As Tynes points out in his motion to remand, none of the CBA provisions Defendant relies upon in its notice of removal suggests the existence of any such duties within the CBA.

Defendant attempts to argue that Tynes' claims are essentially claims related to the medical treatment he received, an area that the CBA covers.   A careful reading of the claims, however, quickly disposes of this argument because the claims have nothing to do with

medical treatment.   The gravamen of the claims is whether the Facility was inadequately sanitized to prevent the spread of infection.   Tynes does not claim that he received inadequate care - his claims concern Defendant's failings with respect to conditions at the Facility.   As such, Tynes' claims do not arise from the CBA.   And resolution of the claims does not depend upon the meaning of any provision of the CBA.  *See Jurevicius v. Cleveland Browns Football Co., LLC,* No. 1:09 CV 1803, 2010 WL 8461220, at *12-*14 (N.D. Ohio Mar. 31, 2010) (granting a motion to remand nearly identical claims for negligence and negligent misrepresentation because the CBA did not contain any language about the adequacy of medical or training facilities).

*Jurevicius* involved facts nearly identical to the instant case and is therefore highly persuasive.[1]   The defendants in *Jurevicius* argued, like Defendant here, that any duty to the plaintiff "to implement appropriate precautions and procedures at the Browns Training Facility designed to eradicate the existence of staph and to prevent the spread of staph would only be owed to Plaintiff because he was covered by the CBA."  *See id.*   The district court disagreed, stating that the defendants' argument was "not well-taken because the CBA does not address any duty or lack of duty that The Browns may have to Plaintiff regarding the facilities. Indeed, the CBA does not contain language about maintenance of training facilities."  *Id.* at *13-*14.   With respect to the negligent misrepresentation claim, the court

---

[1] Notably, although *Jurevicius* involved the application of Ohio law, the elements for the negligence claims are the same under Florida law.

held: "The duty underlying negligent misrepresentation is a duty owed by any professional to any person acting in justifiable reliance on that professional. The CBA does not create this requirement. Just because Plaintiff entered into a CBA with Browns Defendants does not mean that every suit between the two parties is covered by it." *Id.* at *14.

As Tynes points out, much of the legal authority Defendant relies upon is tied to a mischaracterization of Tynes' claims as claims challenging medical care. Defendant also relies heavily upon *Atwater*, an Eleventh Circuit case. But this case is distinguishable. In *Atwater*, several former NFL players sued the NFL and the NFL Players Association under Georgia law for negligence, negligent misrepresentation, and breach of fiduciary duty based on losses they suffered when they invested in what turned out to be a Ponzi scheme. *See* 626 F.3d at 1174. They claimed the NFLPA was negligent in listing the investment advisors in its Financial Advisors Program without conducting a proper examination of the advisors, and that the NFL was negligent in performing inadequate background checks on them. *See id.* The Financial Advisors Program was created in furtherance of an express provision of the CBA requiring the NFL to "use best efforts to establish an in-depth, comprehensive Career Planning Program" to "provide information to players on handling their personal finances" and which also disclaimed that "players shall be solely responsible for their personal finances." *Id.* at 1175. The Eleventh Circuit held that the duties underlying the negligence claims "arose directly from" those CBA provisions and that the express disclaimer provision bore on the scope of any such duty to conduct an adequate background investigation because

it specifically referenced that players were ultimately responsible for their financial planning. *See id.* at 1179-83.

In contrast, in this case, there is no disclaimer in the CBA regarding the conditions of a facility that narrows the scope of a team's common law duty, nor is there any analogous provision requiring the team to use its "best efforts" to maintain a clean facility. Simply put, there is nothing in the CBA regarding the condition of facilities. With respect to the negligent misrepresentation claim, there is also no comparable CBA provision bearing on the reasonableness of Tynes' reliance on Defendant's representations concerning the Facility's conditions. Accordingly, Tynes' claims are not preempted under § 301.

## CONCLUSION

Defendant has not met its burden to establish § 301 preemption. Tynes' claims neither arise from the CBA nor does their resolution depend upon the meaning of any provision of the CBA. The Court therefore lacks subject matter jurisdiction and this case should be remanded to state court.

It is therefore ORDERED AND ADJUDGED that:

1.    Plaintiff's Motion to Remand (Dkt. #23) is GRANTED.

2.    The Clerk is directed to **remand** this case to the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida. The Clerk is also directed to forward a certified copy of this Order to that Court.

-12-

3.      The Clerk is directed to CLOSE this file and terminate any pending motions

as moot.

**DONE** and **ORDERED** in Tampa, Florida on September 24, 2015.


_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE




Copies furnished to:
Counsel/Parties of Record